# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLODOALDO ANTEMATE,<br>　　　Plaintiff,<br><br>　　　　　v.<br><br>ESTENSON LOGISTICS, LLC,<br>　　　Defendant. | CV 14-5255 DSF (RAOx)<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

After a bench trial on June 28, July 12, and November 7, 2018, and having considered the parties' post-trial submissions, the Court makes the findings of fact and conclusions of law set forth below.[1]

---

[1] Any finding of fact deemed to be a conclusion of law is incorporated into the conclusions of law. Any conclusion of law deemed to be a finding of fact is incorporated into the findings of fact.

# FINDINGS OF FACT[2]

## I. ESTENSON INFORMED CLASS MEMBERS OF THE COMPANY'S VALID BREAK POLICIES.

### A. Estenson Hung Posters Showing California's Meal and Rest Break Rules in Conspicuous Places at Its Locations in California.

1. During the entire class period, Estenson posted copies of IWC Wage Order No. 9, containing California's meal and rest break rules, at all its California locations. Tr. 279:2-280:5, 280:19-25.

2. At the Tracy facility, Estenson hung wage and hour posters containing Wage Order No. 9 in the break room. Tr. 374:24-375:3.

3. At the Lathrop facility, Estenson hung wage and hour posters containing Wage Order No. 9 on a bulletin board in the break area. Tr. 437:3-23.

### B. Estenson Adopted an Express Meal and Rest Break Policy Set Out in Its Employee Handbook.

4. During the relevant period, Estenson's Employee Handbook stated with respect to "Meal Periods" that "[a]ll ELC [Estenson Logistics Company] employees are required by both law and Company policy to take a meal period of at least thirty (30) minutes in any workday that they work more than five (5) hours. This meal period is to be observed before an employee's 4.5 hour on any given shift. Employees who do not take a meal break of at least thirty (30) minutes each day they work more than five (5) hours may be subject to appropriate disciplinary action." Ex. 590 at 64-65.

---

[2] Plaintiff submitted a "red-line" of Defendant's proposed findings of fact and conclusions of law indicating numerous disputes. Where the Court declined to adopt one of the disputed facts, the Court found the fact was either unsupported or irrelevant to its determination.

5. The Employee Handbook further stated that "[e]mployees are to be completely relieved of their job responsibilities during their meal periods. This means that you should not perform any work during your meal period and should take all steps necessary to ensure that you are not interrupted by any work tasks during the meal period. Employees must record the exact begin and end-time of their daily meal period(s) through use of the timekeeping device in use for your position." Ex. 590 at 64.

6. The Employee Handbook authorized second meal periods as follows: "CALIFORNIA: Employees that work more than ten (10) hours in a workday are required to take a second thirty (30) minute uncompensated meal period unless they elect to waive the second meal period." Ex. 590 at 65.

7. With respect to rest breaks, the Handbook stated that: "Employees are expected to schedule their 10-minute rest periods at their own discretion under the guidelines of the state's labor laws for your site of origin. This information is updated and posted at each location annually by the Human Resource Department." Ex. 590 at 64.

## II. CLASS MEMBERS GENERALLY TOOK MEAL AND REST BREAKS.

8. Plaintiff's expert, Dr. Hunt, reviewed the time records of Class Members and determined that Class Members completely missed only 2.6% of possible meal breaks. Tr. 33:25-34:5.

9. Some of the meal breaks taken were short, but only by seconds.

10. For example, Dr. Hunt testified that Plaintiff experienced 79 short first meal breaks, but Plaintiff's time records show that each of these was late by fewer than 60 seconds.

11. Similarly, 19 meal breaks taken by Ontario Home Depot Class Member Eric Fonseca during the 44 days of his employment were "short," but only by a matter of seconds.

3

## III. NO EVIDENCE LINKED THE ALLEGED VIOLATIONS THAT DR. HUNT COUNTED WITH UNIFORM POLICIES OR PRACTICES THAT CAUSED CLASS MEMBERS TO DELAY, SHORTEN, OR SKIP BREAKS.

### A. The Work Experiences of Class Members Were Not Uniform or Interchangeable.

12. While Class Members shared the same general job description, their work experiences varied from day to day, shift to shift, and location to location.

13. Between five and seven yard hostlers worked on a given shift at the Tracy facility. Tr. 87:14-20 (Plaintiff testified that Tracy had seven yard hostlers); Tr. 168:17-19 (Rodriguez testified there were five); Tr. 197:20-25, 198:4-9 (Bough testified that there were five hostlers at Tracy, but one of the five was assigned the role of "pallet switcher.").

14. The Lathrop facility had only one yard hostler working per shift, but the site manager helped yard hostlers move trailers when needed. Tr. 418:24-419:3, 438:22-24, 452:9-12.

15. The only trial witness who worked at a location other than Tracy or Lathrop was Redlands yard hostler Kristy McMillian, who worked at that location for only 18 days, didn't recall the names of any other yard hostlers she worked with, and had no idea when they would have taken breaks. Tr. 540:20-24, 541:2-4, 544:8-12.

16. Plaintiff and his witnesses did not know why Class Members at their own locations or at any other locations took breaks when they did. Tr. 112:11-14, 121:11-12 (Plaintiff does not know about break practices at other facilities); Tr. 213:23-214:10 (Maureen Bough does not know whether, when, or why other yard hostlers took breaks when they did and has no knowledge of other locations); Tr. 510:19-511:2, 520:1-17 (Chong Vue doesn't know when or why class members took breaks and "can't

4

speak for them."); Tr. 540:23-24, 544:8-12 (Kristy McMillian worked at one location for 18 days and doesn't know when class members took breaks).

17. Witnesses disagreed about how their work was assigned at the Tracy facility, with Plaintiff claiming he always kept his radio on to receive assignments, Tr. 125:5-12, but Rodriquez testifying that he turned his radio off during meal breaks, Tr. 154:18-21.

18. Similarly, Plaintiff said that Home Depot employees called him on his radio about loads to be moved, Tr. 68:8-24, but McMillian, who worked at the Redlands location, said Home Depot never called her on her radio during breaks, Tr. 540:10-12.

19. At some Home Depot distribution centers, yard hostlers received their trailer movement assignments through Home Depot's YMS. Tr. 313:3-11.

20. Home Depot's YMS was not the same at each location. Tr. 435:25-436:11.

21. Class Members logged out of the YMS to take a meal break. Tr. 100:22-25, Tr. 147:3-9, Tr. 200:8-10.

22. There was no evidence that Home Depot ever caused a Class Member to delay, shorten, or skip a break.

**B.   Plaintiff Did Not Establish That the Pace and Amount of Work Expected Prevented the Taking of Timely Meal Breaks.**

   **1.   The Evidence of Work Rates Was Inconclusive.**

23. Plaintiff claimed to have moved an average of 120 trailers per day at 10 minutes per move. Tr. 64:3-6.

24. Estenson witnesses testified that moves took 4-6 minutes and that hostlers would move only 50 trailers per shift. Tr. 314:14-16, 320:3-5.

25. Neither of these estimates is persuasive. The estimates of Plaintiff's witnesses result in far more work than would be possible during their shifts and the estimates of Estenson's witnesses result in hostlers who would be idle for much of their shifts.

26. The true number of moves and the time per move is more likely in between the numbers provided by the parties' witnesses.

27. The hostlers were likely busy through most of their shifts, but there was not so much work that they needed to work constantly from the beginning to the end of their shifts.

### 2. Class Members Were Not Required to Wait Until All Work Was Completed to Take Breaks, But Rather Took Breaks at Times of Their Choosing.

28. Plaintiff's witnesses testified that the workflow was steady throughout the day and that there was no particularly good or bad time to take breaks. Tr. 132:24-133:1, 213:23-24, 521:1-7, 547:7-548:9.

29. Plaintiff testified that yard hostlers would take meal breaks when they were hungry, that he would sometimes take lunch earlier, and sometimes later, after consulting with other yard hostlers on his shift, and that some yard hostlers scheduled their meal breaks concurrently. Tr. 110:11-17, 110:20-25, 111:1-7.

30. Class Members were typically able to take breaks despite the flow of work because other yard hostlers on their shifts would cover the work flow. Tr. 157:22-158:6, 174:11-17, 175:13-18, 177:8-11, Tr. 507:19-23, Tr. 512:12-25, Tr. 521:1-7.

31. Former Lathrop site manager Mark Connacher testified that the sole yard hostler working on each shift there has the discretion to schedule breaks when it is convenient. Tr. 438:22-24.

6

32. If it is busy at Lathrop when the yard hostler takes a break, Home Depot must wait for the yard hostler to return from lunch. Tr. 439:8-12.

33. No witness testified that he or she delayed, shortened, or missed a break because of direct pressure to meet Home Depot's on-time delivery goal.

### 3. The Designation of Trailer-Moves As "Priority Moves" Did Not Interfere With Meal or Rest Breaks.

34. The designation of a trailer-move as a "priority" changed only the order of the trailer moves; it typically did not increase the number of trailers moved during a shift or change the time it took to move the trailers. Tr. 379:22-380:5.

35. Plaintiff's witnesses confirmed that they could take breaks even when work was coming in. Tr. 157:22-158:6, 175:13-18, 177:8-11 (other yard hostlers could cover incoming work while Rodriguez was on a break); Tr. 521:1-7 (Vue could take breaks knowing that other yard hostlers were on duty to handle any work that might come in).

36. Priority moves became the next move to be made but priority trailers typically did not have to be moved faster or differently from other moves. Tr. 115:4-5, 116:18-117:2, Tr. 195:12-19.

## C. There Was No Evidence That Estenson Caused Class Members to Delay, Shorten, Or Skip Second Meal Breaks.

37. Class Members typically signed waivers signifying their agreement to forgo their second meal breaks.

38. There was no evidence that the incidence of missed second meal breaks resulted from job pressure rather than employee choice.

## IV. THERE WAS NO RELIABLE EVIDENCE SHOWING WHETHER AND WHEN CLASS MEMBERS TOOK REST BREAKS OR WHY REST BREAKS WERE MISSED.

39. Plaintiff took 15-minute rest breaks, which he considered to be only 10 minutes long, including the time it took him to drive his yard goat to the break room. Tr. 118:16-119:10.

40. Plaintiff checked both the lunch and rest break boxes when he took breaks. Tr. 84:14-22.

41. Rodriguez took 10-minute rest breaks. Tr. 154:25-155:1.

42. Sometimes Rodriguez chose to combine his 10-minute rest breaks with his 30-minute meal break. Tr. 149:19-150:4.

43. Rodriguez never checked the break boxes on his trip sheets. Tr. 179:7-19.

44. Bough checked break boxes on her trip sheets to indicate that she took meal breaks, not rest breaks. Tr. 208:18-210:24.

45. Bough conceded that her trip sheets do not show whether she took a rest break. Tr. 210:3-9.

46. Vue said he was trained to leave trip sheets blank so he never filled them in if he took a break. Tr. 491:13-24.

47. Vue acknowledged that his trip sheets do not show whether he took rest breaks. Tr. 524:25-525:2.

48. McMillian took 10-minute rest breaks every day. Tr. 548:13-20, 549:2-4.

49. This evidence shows that the rest break boxes on the trip sheets are not a reliable record of whether each Class Member took rest breaks.

50. Dr. Hunt added up alleged rest break violations by counting the number of instances that boxes on trip sheets labeled "breaks" were left unchecked. Tr. 34:19-35:5.

51. Given that the Class Members' trip sheets are not a reliable indication of whether and when they took or missed rest breaks, Dr. Hunt's calculation of the number of rest breaks Class Members missed during the class period is also not reliable.

52. Plaintiff also presented no class-wide evidence explaining why Class Members missed rest breaks beyond testimony that the yard hostlers were generally busy.

53. As with the meal breaks, Plaintiff failed to establish that the hostlers were so busy throughout their shifts that rest breaks could not be taken.

## CONCLUSIONS OF LAW

### I. CLASS CERTIFICATION FOR LOCATIONS OTHER THAN TRACY IS NOT APPROPRIATE

1. The vast majority of evidence at trial involved operations at Tracy warehouse. Plaintiff has not established that practices at other locations were substantially similar, especially in light of Plaintiff's theory of the case.

2. Evidence was presented by multiple witnesses concerning the Lathrop facility but (1) Lathrop used only a single hostler per shift and was therefore materially dissimilar from Tracy, and (2) there are insufficient Lathrop hostlers to satisfy the numerosity requirement on their own.

3. The only witness from the Redlands location worked there for only 18 days. The witness's testimony suggested that Redlands procedures may have differed from those at Tracy. In any event, there is insufficient evidence that Redlands yard hostlers should be grouped with Tracy yard hostlers for the purposes of this litigation.

4. Given these conclusions, the Court decertifies the class for all locations other than Tracy.

## II. PLAINTIFF FAILED TO PROVE HIS CLASSWIDE MEAL AND REST BREAK CLAIMS.

### A. It Is Plaintiff's Burden to Prove Estenson Caused the "Violations" Dr. Hunt Tabulated.

5. A California employer "shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512.

6. Employees who work more than ten hours must be provided a second 30-minute meal break. Id.

7. These breaks do not qualify as on-duty work time if the employee is relieved of all duty during the period. Cal. Code Regs. tit. 8, § 11090(11)(C) (Wage Order No. 9).

8. If an employer "fails to provide an employee a meal or rest or recovery period" in accordance with the above rules, the employer is liable for what has become known as premium pay, i.e., "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7 ("Section 226.7").

9. Employers are obligated only to make meal and rest breaks available to employees; they owe penalties for failing to do so only if they have impeded or prevented employees from taking breaks. Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004 (2012).

10. An employer satisfies its obligation to provide meal breaks when it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." Id. at 1040.

11. Rest breaks are governed by the same standard as meal breaks, except that employers have more flexibility as to the timing of the breaks. Id. at 1031-32.

12. Plaintiff was required to prove Estenson caused any alleged violation for which the Class sought recovery by establishing a causal connection between policies or practices that applied to all Class Members and the short, delayed, or missed breaks for which they seek premium pay under Section 226.7.

**B. Estenson Maintained Meal and Rest Break Policies Consistent With California Law and Advised Class Members of Those Policies.**

13. The meal and rest break policies set out in Estenson's Employee Handbook are consistent with the requirements of California's meal and rest break rules.

14. Estenson also posted notice of California's break laws and regulations. See Cal. Lab. Code § 1183(d).

15. There was no evidence that any Class Member delayed, shortened, or missed a meal or rest break because of any alleged defect in Estenson's meal and rest break policies.

16. Estenson had no obligation to ensure that Class Members actually take the meal and rest breaks provided under the company's policies. See Brinker, 53 Cal. 4th at 1040-41 (rejecting the "ensure" standard).

**C. The Reasons Class Members Delayed, Shortened, Or Missed Meal Breaks Cannot Be Inferred From Break Records Alone.**

17. That Class Members sometimes delayed, shortened, or missed meal breaks does not prove break claims on either an individual or classwide basis because mere records of late, short, or missed breaks say nothing about *why* the breaks were late, short, or missed.

18. Neither the rate at which Class Members, on average, delayed, shortened, or skipped their breaks, nor the fact that some Class Members did so at relatively high rates, gives rise to an inference that Estenson caused those breaks to be late, short, or missed.

19. Dr. Hunt's review of the Class Members' time records shows that while some Class Members had a large proportion of breaks that were late, short, or missed, others had few of these, with the lowest "violation" rates ranging from zero and the single digits.

20. Moreover, that many of the "short" breaks Dr. Hunt characterized as "violations" were short by a minute or two or, as was often the case, a matter of mere seconds, suggests that Class Members most likely just clocked in slightly early as opposed to having been forced to cut breaks short.

21. Proof that workers are busy throughout the day is not necessarily evidence that they have been deprived of meal and rest breaks without evidence that the workers were required to be so busy that they could not reasonably be expected to take breaks.

### D. Causation Cannot Be Presumed.

22. The Court has previously rejected the application of Justice Werdegar's concurrence that would presume that every break recorded as late, short, or missed was late, short, or missed because of the employer's conduct. See Order Denying Defendant's Motion in Limine No. 4 at 2 (Dkt. no. 186).

23. The Court sees no reason to change its previously stated view that "[i]mposing the [Werdegar] evidentiary presumption would undermine Brinker's holding – namely, that employers are not obligated to police or enforce breaks. For all practical purposes, imposition of a rebuttable presumption would require employers

to police breaks or risk liability, a burden expressly rejected in Brinker." Id.

### E. The Absence of Reliable, Quantitative Evidence of Whether and When Class Members Took Rest Breaks is a Separate Reason to Reject Plaintiff's Rest Break Claim.

24. In addition to providing meal breaks, California employers must "authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period." Cal. Code Regs. tit. 8, § 11090(12)(A).

25. Rest break time counts as hours worked. Id.

26. As stated earlier, the Class Members' trip sheets are not a reliable indication of whether and when they took or missed rest breaks.

27. Therefore, Dr. Hunt's calculation of the number of rest breaks Class Members missed during the class period is also not reliable.

28. Further, Plaintiff also presented no evidence for the Class explaining why Class Members missed rest breaks beyond testimony that the yard hostlers were generally busy.

29. Given those facts, there is insufficient evidence to conclude that Estenson failed to authorize and permit the rest breaks Dr. Hunt identified as violations.

## III. PLAINTIFF FAILED TO PROVE HIS CLASSWIDE DERIVATIVE CLAIMS.

### A. Class Members Are Not Entitled to Section 203 Late Wage Payment Penalties.

30. Plaintiff seeks penalties under Cal. Labor Code § 203, claiming Estenson failed to timely pay him meal and rest break premiums and that these premiums constitute wages that should have been paid on the termination of his employment.

31. To prove Class Members are entitled to waiting time penalties under Section 203, Plaintiff must prove, among other things, that (1) Estenson failed to pay the employee all wages due on the date that the employee's employment ended, and (2) Estenson's failure to pay those wages was willful. Cal. Lab. Code § 203.

32. Plaintiff's Section 203 claim fails because Plaintiff has not demonstrated that Estenson owed formerly-employed Class Members meal and rest break premiums at the time their employment with Estenson ended.

**B. Class Members Are Not Entitled to Section 226 Penalties.**

33. Plaintiff contends that his pay statements violated Cal. Labor Code § 226 because they failed to show that he received premium pay for meal and rest break violations.

34. Plaintiff's claim for Section 226 penalties fails because Plaintiff has not demonstrated that Estenson owed Class Members the meal and rest break premiums he claims should have been itemized on their wage statements. Plaintiff's UCL claim is derivative of his other claims.

35. Plaintiff's claim for restitution under the Unfair Competition Law is entirely derivative of his meal and rest break claims and fails along with them.

**IV. PLAINTIFF FAILED TO PERSUADE THE COURT THAT HE SHOULD SUCCEED ON HIS INDIVIDUAL CLAIMS**

36. While Plaintiff directly testified that his meal breaks were cut short on many occasions and that he missed rest breaks on many occasions, the persuasiveness of those claims rests on the premise that Plaintiff was too busy to take his full breaks and that the required pace of work amounted to a failure to provide breaks.

37. As discussed above, the Court is not convinced the amount of work hostlers were expected to perform amounted to a de facto failure to provide meal and rest breaks.

38. While Plaintiff may have skipped rest breaks or cut meal breaks short from time to time, the weight of the evidence shows that the facilities were not so busy as to prevent hostlers from taking full meal and rest breaks. This is especially true because there were at all times multiple hostlers on duty at Tracy to cover any urgent trailer moves.

39. In other words, the Court is not convinced that acts by Estenson were inconsistent with providing breaks.

40. And while Plaintiff may have felt pressure to complete tasks instead of taking full breaks, the Court finds that it is more likely that such pressure was due to Plaintiff's own diligence and good work ethic than being forced – or even encouraged – by Estenson to cut breaks.

41. As with the Class, Plaintiff's derivative claims under California Labor Code §§ 203 and 226 fail along with his main meal and rest break claims.

IT IS SO ORDERED.

Date: September 25, 2019

*Dale S. Fischer*
Dale S. Fischer
United States District Judge